Matthew A. Paré, Esq., California State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RENZO MACCHIAVELLO, individually and d/b/a RENZO'S TASTE OF PERU; and MACCHIAVELLO, LLC, an unknown business entity d/b/a RENZO'S TASTE OF PERU, <br><br> Defendants. <br> JURY TRIAL DEMANDED | Case No.: 8:12-cv-01748-TJH-PLA <br><br> **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS IN FAVOR OF DEFENDANTS BASED UPON LACK OF SUBJECT MATTER JURISDICTION DUE TO LACK OF STANDING; FILED CONCURRENTLY WITH DECLARATION OF ATTORNEY MATTHEW A. PARE** <br><br> *[Pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(3)]* <br><br> Date: Tuesday, October 1, 2013 <br> Time: 9:00 a.m. <br> Judge: Honorable Terry J. Hatter, Jr. <br> Courtroom: 17 <br><br> UNDER SUBMISSION |

TO THE HONORABLE TERRY J. HATTER, JR., PLAINTIFF INNOVATIVE SPORTS MANAGEMENT, INC., AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, October 1, 2013, at 9:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled United States District Court, located at 312 North Spring Street, Courtroom 17, Los Angeles, CA 90012-4701, defendants Renzo

1 Macchiavello and Macchiavello, LLC d/b/a Renzo's Taste of Peru will present their motion for a
2 judgment in their favor on the pleadings in this case, and request to dismiss the lawsuit due to lack
3 of subject matter jurisdiction based upon the plaintiff's lack of standing. This motion is being
4 made pursuant to Federal Rules of Civil Procedure, Rule 12(c), and Rule 12(h)(3). This motion is
5 made following multiple telephonic conferences of counsel pursuant to L.R. 7-3.
6     The motion is based on this Notice of Motion and Motion, the Memorandum of Points and
7 Authorities filed concurrently, the declaration of attorney Matthew A. Pare, with exhibits, filed
8 herewith, and upon such other matters as may be presented to the Court at the time of the hearing.
9 DATED: August 23, 2013                LAW OFFICE OF MATTHEW PARE, APC

10
11                                         By:    /s/ Matthew A. Paré
12                                               Matthew A. Paré, Esquire
                                              Counsel for Defendants
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents:**

I.  INTRODUCTION……………………………………………………….5

II. ARGUMENT……………………………………………………………....5

    a. Standing is a Requirement in Order for the Court to Have Subject Matter Jurisdiction……………………………………………….5

    b. Innovative Sports Management, Inc. Does Not Have Standing in This Case Because it is not the Exclusive Licensee…………………………………………..6

    c. Legal Authority from Copyright and Patent Infringement Cases is Applicable to Cases of TV Signal Piracy…………………………………...10

    d. There is No Evidence That the Plaintiff Fulfilled its Contractual Requirements……………………………………….…10

    e. Other Cases that Have Addressed This Issue of the Possible Lack of Standing on the Part of Plaintiff in TV Signal Piracy Cases Are Distinguishable……………………………………………..13

III. CONCLUSION……………………………………………………...15

**Table of Authorities**

U.S. Const. Art. III, section 2……………………………………………………..………5

47 U.S.C. section 553……………………………………………………………………10
47 U.S.C. section 605……………………………………………………………………10

Federal Rule of Civil Procedure 12(b)(1)……………………………………………..…6
Federal Rule of Civil Procedure 12(c)……………………………………………………6
Federal Rule of Civil Procedure 12(h)(3)……………………………………………...…6
Federal Rule of Civil Procedure 26(a)(1)(A)……………………………………………11

*Althin CD Med., Inc. v. West Suburban Kidney Ctr.* 874 F.Supp. 837,
842 (N.D. Ill. 1994)……………………………………………………………………....7
*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)…………………….5
*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1320-21 (Fed. Cir. 2009)….....7
*Bennett v. Spear*, 520 U.S. 154, 162 (1997)……………………………………………..6
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)……………………..………5
*Davis v. Federal Election Com'n*, 54 U.S. 724 (2008)…………………………………..5
*Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013)………………………………...…6
*HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011)……..……7
*J & J Sports Productions, Inc. v. Flores*, 913 F.Supp.2d 950, 955 (E.D.Cal., 2012)……..10
*J & J Sports Productions, Inc. v. Richard D. Baylor*,
Case No. 5:13-cv-02483-JS (Document 16, filed on 7/25/2013,
in the Eastern District of Pennsylvania)……………………………………………...12
*J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.*, Civil Action No.
07-3850, 2009 WL 1886124 (E.D. Pa. June 30, 2009)…………………………….11, 12, 13
*Joe Hand Promotions, Inc. v. Conroy*, 167 F.Supp.2d 536, 539 (N.D.N.Y.2001)……...10
*Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir.2001)…………….6
*Kingvision Pay Per View v. Boom Town Saloon, Inc.*, 98 F.Supp.2d 958,
964 (N.D. Ill. 2000)……………………………………………………………………..10
*Lujan v. Defenders of Wildlife*, 504 U.S. at 560-561 (1992)……………………………6
*Nafal v. Carter*, 540 F.Supp.2d 1128, 1142-1143 (C.D. Cal. 2007)
aff'd, 388 F.Appx. 721 (9th Cir. 2010)…………………………………………………7
*Natl Satellite Sports, Inc. v. Marzullo*, No. 96 C 6621, 1998 WL 526570,
at *4 (N.D.Ill. Aug.17, 1998)……………………………………………………………10
*Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352,
1363-1365, 1370 (D.Del.1993)………………………………………………………….7
*Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1190-92 (Fed. Cir. 2007)……………7
*Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001)……………………………………10
*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (2013)…………………………………….8
*Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996)……………………………5
*Time Warner Cable Nat. Div. v. Bubacz*, 198 F.Supp.2d 800 (N.D.W.Va. 2001)………10
*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987)…...5
*Worth v. Seldin*, 422 U.S. 490, 498 (1975)……………………………………………..6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This case stems from the exhibition of a television program, specifically Peru v. Chile soccer game, at the business establishment Renzo's Taste of Peru, on Tuesday, October 11, 2011. The plaintiff in this action, Innovative Sports Management, Inc. alleges that it has the rights to the subject television program, and defendants did not pay Innovative Sports Management, Inc. for the rights to show the subject television program, but nevertheless did so at this commercial establishment. The basis for this present motion is that the plaintiff Innovative Sports Management, Inc. lacks standing to pursue this claim. The lack of standing results in a lack of subject matter jurisdiction, and therefore the Court must dismiss the case.

### II.

### ARGUMENT

**A.   Standing is a Requirement in Order for the Court to Have Subject Matter Jurisdiction**

Artile III, section 2 of the United States Constitution confines federal courts to the decisions of "Cases or Controversies." U.S. Const. Art. III, section 2. Standing to sue is an aspect of the case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).

A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "A plaintiff must demonstrate standing for each claim he seeks to press" and " 'for each form of relief' " that is sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Davis v. Federal Election Com'n*, 54 U.S. 724 (2008).

To qualify as a party with standing, a litigant must first show (1) an "invasion of a legally protected interest that is concrete and particularized, and actual or imminent." *Arizonans for*

*Official English v. Arizona*, 520 U.S. 43, 64 (1997).  In other words, the litigant must seek relief for an injury that affects him in a "personal and individual way," such that he has a "direct stake in the outcome of the case." *Id*.  Once the litigant establishes an injury sufficient for standing, he must also show (2) a causal link between the claimed injury and opposing party's challenged conduct; and (3) redressability of the injury by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-561 (1992); *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013).  These above-described elements of standing from *Lujan* address the threshold issue of Constitutional standing, although the notion of standing can be further limited as there are both Constitutional standing requirements as well as prudential standing requirements (judicially self-imposed), in addition to statutory standing requirements, and contractual standing requirements.  See e.g., *Worth v. Seldin*, 422 U.S. 490, 498 (1975); *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir.2001).  These other limits on standing are primarily the basis upon which defendants bring this motion, as detailed *infra*.

Although Federal Rule of Civil Procedure 12(b)(1) contemplates a mechanism by which a challenge to the subject matter jurisdiction can be raised, it is not the only vehicle.  In particular, Federal Rule of Civil Procedure 12(h)(3) states that "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (Emphasis added.)  Therefore, this issue can be raised at any time, and a motion for judgment on the pleadings is authorized by Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

**B.   Innovative Sports Management, Inc. Does Not Have Standing in This Case Because it is not the Exclusive Licensee**

In television signal piracy cases and intellectual property matters at large, there is a body of law which explains how a licensee must be the "exclusive" licensee in order to have standing to sue (see cases cited *infra*).  Indeed, the plaintiff Innovative Sports Management, Inc. appears to be well aware of this requirement inasmuch as it claims the "exclusive" rights to this subject TV program in paragraph 16 of its complaint.

1   In *Nafal v. Carter*, 540 F.Supp.2d 1128, 1142-1143 (C.D. Cal. 2007) aff'd, 388 F.Appx.
2   721 (9th Cir. 2010) the court held that the licensee lacked standing to sue since the licensor did not
3   grant it the sole discretion to sue a third party for unlawfully appropriating the subject matter of the
4   license.
5   In *Althin CD Med., Inc. v. West Suburban Kidney Ctr.* 874 F.Supp. 837, 842 (N.D. Ill.
6   1994) the licensee lacked standing to sue since the licensor retained rights (1) to determine
7   whether lawsuits should be brought, and (2) to approve the licensee transferring the subject matter
8   of the license. The court also stated that "[o]nce the copyright owner grants an exclusive license
9   of particular rights, only the exclusive licensee and not the original owner can sue for later
10  infringements of such rights."
11  In *AsymmetRx, Inc. v. Biocare Med., LLC,* 582 F.3d 1314, 1320-21 (Fed. Cir. 2009) the
12  licensee did not have standing since the licensor retained rights (1) to sue, join any suit brought by
13  the licensee and approve the settlement of any suit, and (2) to approve the licensee sublicensing the
14  license's subject matter, and (3) the license other parties.
15  In *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1190-92 (Fed. Cir. 2007) the licensee
16  did not have standing since the licensor retained a substantial measure of control over the licensee
17  and licensed property, including (1) an equity interest in the proceeds of licensing and litigation
18  activities, and (2) the right to veto the licensee's licensing and litigation decisions.
19  In *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) the court
20  made clear that the fact that the license uses the phrase "exclusive license" is not dispositive as it
21  is the agreement's substance, not the labels used, that controls the analysis of whether a licensee
22  has standing to sue.
23  In *Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1363-1365,
24  1370 (D.Del. 1993) the court held that the licensee lacked standing to sue in its own name as
25  matter of patent law where holder had not transferred substantially all rights in patent, holder
26  retained title to patent, licensee's interests in patent were not exclusive, and patentholder had not
27  granted licensee right to sue in its own name.

1  In *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (2013) the court held that the plaintiff did not
2  have standing in a copyright action where the plaintiff was a non-exclusive licensee, thus the
3  dismissal for lack of standing was affirmed.
4  The rules of law articulated by the above-referenced cases can be extracted and synthesized
5  as follows: In order to have standing to sue the plaintiff (licensee) must have the sole discretion to
6  sue, the original licensor cannot have retained rights to determine if a lawsuit can be brought or to
7  license other parties, the original licensor cannot retain a financial interest in the litigation or the
8  ability to direct the litigation decisions, the licensee must have an exclusive license not just in
9  name but in substance, and all rights must be transferred to the licensee in order for the licensee to
10  have the power to sue.
11  Now, in turning to the license that was produced in this instant case and measuring it up
12  against all of these above-described dimensions, it is clear that the plaintiff Innovative Sports
13  Management, Inc. does not have the power to sue and thus the case must be dismissed.  The
14  license is attached as Exhibit A to the declaration of attorney Matthew A. Pare, filed concurrently,
15  with plaintiff's Rule 26 initial disclosures.
16  In reviewing the license agreement, the first major issue that is apparent is that the licensee
17  is *Integrated* Sports Management, Inc. d/b/a Integrated Sports, whereas the named plaintiff in this
18  case is *Innovative* Sports Management, Inc.  On the face of it those appear to be two different
19  corporations with similar names, and yet there is no documentation whatsoever evidencing a
20  transfer of ownership rights from "Integrated" to "Innovative."  This alone is fatal to the plaintiff's
21  complaint.   Also, the difference between Integrated and Innovative cannot merely be a typo,
22  particularly because Integrated Sports is in fact a different company, and is actually what appears
23  on the rate sheet for this event submitted with plaintiff's initial disclosures as exhibit 3, attached to
24  the declaration of attorney Matthew A. Pare, filed concurrently (see also the website
25  www.integratedsportsnet.com, which is mentioned on the rate sheet).
26  In the first sentence under the "Rights Granted" section of page one of the event
27  distribution agreement is states that "ALJ hereby grants Distributor the *non-exclusive* right, subject

to the terms and conditions set forth below, to market and enter into agreements for the Live Closed Circuit TV exhibition of the Event within the territory.  For clarity, no PPV rights are granted to Distributor pursuant to this Agreement." (Emphasis added).  In other words, the rights being granted under this license agreement were limited and specifically the "non-exclusive" rights.  Not only were the rights of the licensee limited, but the distribution agreement goes on to state that "Any and all rights not expressly granted to Distributor herein shall remain the exclusive property of ALJ." (Event Distribution Agreement, page 1, section "Rights Granted", paragraph (c).  This catch-all provision is particularly important because there is no specific provision that mentions rights to sue for piracy and as such any such rights are being withheld by the licensor in this case ALJ and not conveyed to the licensee.

The license agreement also specifies several obligations of the licensee, such as marketing and related obligations, as well as providing the licensor with sales reports.  (Event Distribution Agreement, page 2, section "Parties Obligations").  The pricing that the license was to charge the customers was also "subject to final approval of ALJ." *Id*.  In other words, the licensor in this case retained considerable control over the subject program and the activities of the licensee, and only granted the licensee very limited rights.

Continuing in the analysis of the license agreement, under the section on page 2, entitled "Compensation/Revenue split" it indicates that "Distributor shall not deviate from the rate card without ALJ's prior written approval."  Incidentally, there is also no evidence that the rate card produced by plaintiff is the same pre-approved rate-card mentioned in that paragraph of the license agreement which was supposed to be attached as exhibit B.  The license agreement in that paragraph also goes on to mention that "ALJ shall have the right to audit Distributor's books and records pertaining to the Event to verify the accuracy of Distributor's payments and accountings under this Agreement."

Significantly, the agreement under the sectioned entitled "Trademarks and Other Property Rights" states that "Distributor hereby recognizes and agrees that all copyrights, trademarks, trade names and other rights associated with the Event and the Event itself (collectively, the "Property")

are and shall remain the sole and exclusive property of ALJ or others, and Distributor shall not have any right to use the Property except as herein agreed." This is extremely significant because the licensor, ALJ, has expressly retained the intellectual property rights and stated that the licensee does not have any; therefore in attempting to pursue this case Innovative Sports Management, Inc. is trying to assert rights that it simply does not have. The agreement goes on to state that "Distributor covenants to take appropriate measures to *prevent* misappropriation or unauthorized use of the Event and all rights associated therewith, and shall give ALJ prompt written notice of any such misappropriation or unauthorized use." (Emphasis added.) In other words, the licensee was to help prevent misappropriation, not try to sue people after an alleged misappropriation.

In total, based upon the license it is clear that Innovative Sports Management, Inc. does not have unfettered discretion to bring lawsuits against defendants as the plaintiff was not granted that authority from Al Jazeera Media Network. In fact, it does not have that authority at all. Al Jazeera Media Network did not relinquish its rights to pursue litigation and control that litigation, which it must have in order for Innovative Sports Management, Inc. to have standing. Basically, in order for the licensee Innovative Sports Management, Inc. to have standing it must be an "exclusive" license is substance, and in this case it is not – the license agreement specifically states that it is not. Therefore, the Court must dismiss Innovative Sports Management, Inc.'s complaint due to lack of subject matter jurisdiction in light of the fact that the plaintiff does not have standing.

### C. Legal Authority from Copyright and Patent Infringement Cases is Applicable to Cases of TV Signal Piracy

It is anticipated that the plaintiff will attempt to distinguish the authority cited herein by defendants on the basis that many of these cited cases involve copyright violation claims and patent infringement claims, whereas this instant case is one for TV signal piracy (which plaintiff will attempt to portray at categorically different). The reality is, however, that these areas of the law are so closely related that courts consistently borrow laws and use the same analysis for TV signal piracy cases and other types of intellectual property claims.

/ / /

1     For example, in analyzing the statute of limitations for federal claims of TV signal piracy
2 under 47 U.S.C. section 605 and 47 U.S.C. section 553 one approach has been to use the statute of
3 limitations from the Copyright Act due to the similarities.  *Prostar v. Massachi*, 239 F.3d 669 (5th
4 Cir. 2001) (using statute of limitations from the federal Copyright Act, 47 U.S.C. § 501, et seq.);
5 *Kingvision Pay Per View v. Boom Town Saloon, Inc.*, 98 F.Supp.2d 958, 964 (N.D. Ill. 2000) (also
6 used the statute of limitations from the Copyright Act), and *Time Warner Cable Nat. Div. v.*
7 *Bubacz*, 198 F.Supp.2d 800 (N.D.W.Va. 2001) (also used the statute of limitations from the
8 Copyright Act).
9     Another example of TV signal piracy law borrowing from intellectual property law is the
10 analysis of when to impose individual liability on the part of corporate officers for these statutory
11 violations.  *J & J Sports Productions, Inc. v. Flores*, 913 F.Supp.2d 950, 955 (E.D.Cal., 2012)
12 (describing how the genesis of that particular rule of law came from borrowing the standards set
13 forth in copyright infringement cases).
14     Therefore, there is ample basis for the Court to look to intellectual property law more
15 broadly in establishing the rules of standing for TV signal piracy cases.
16     **D.     There is No Evidence That the Plaintiff Fulfilled its Contractual Requirements**
17     Courts have found that where plaintiff's status as a person aggrieved under 47 U.S.C. § 605
18 arises out of a proprietary right granted by contract and that contract further limits plaintiff's right
19 to sue, the court cannot find standing if plaintiff brings its cause of action in breach of those
20 contractual limitations.  See, *Joe Hand Promotions, Inc. v. Conroy*, 167 F.Supp.2d 536, 539
21 (N.D.N.Y.2001) and *Natl Satellite Sports, Inc. v. Marzullo*, No. 96 C 6621, 1998 WL 526570, at
22 *4 (N.D.Ill. Aug.17, 1998) as cited in *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* Civil
23 Action No. 07-3850, 2009 WL 1886124 at *10 (E.D. Pa. June 30, 2009).
24     In this case the plaintiff Innovative Sports Management, Inc. (assuming that "Innovative" is
25 the same entity as "Integrated") appears to be in breach of its contract with Al Jazeera Media
26 Network ("ALJ") and there is no evidence that Innovative Sports Management, Inc. fulfilled its
27 duties to ALJ prior to brining this lawsuit, as it must in order to have standing.  Notably, the

1  plaintiff Innovative Sports Management, Inc. did not even allege in its complaint that it fulfilled its
2  contractual preconditions to sue.
3      To be clear, the contractual conditions or requirements can be found in the license
4  agreement, which require that the licensee (Distributor) have a call center and trained
5  representatives, aggressively market towards a database of 2,000 establishments and locate venues
6  not on the current list, develop a dynamic pricing strategy, and provide ALJ with sales reports, for
7  example.  (License agreement, page 2, "Parties Obligations" section).  Additionally, it was the
8  responsibility of the Distributor to take measures to prevent misappropriation, and to provide
9  written notice of any such misappropriation or unauthorized use.  (License agreement, pages 2-3,
10 "Trademarks and Other Property Rights" section).
11     Quite simply, there is no evidence that Innovative Sports Management, Inc. did any of
12 these above-mentioned things required of it under the license agreement.  As such, the plaintiff
13 does not have standing to bring this lawsuit.
14     One might ask the reasonable question as to how can defendants know that Innovative
15 Sports Management, Inc. did not fulfill its duties under the license agreement.  The answer is
16 because no such documentation was produced by the plaintiff Innovative Sports Management, Inc.
17 with its Rule 26 initial disclosures and there is an affirmative duty in federal litigation to make
18 such a disclosure of supporting evidence, even absent a specific discovery request.  Federal Rule
19 of Civil Procedure 26(a)(1)(A).  Particularly with regard to the marketing duties and "written
20 notice" of misappropriation, there would be documentary evidence of that if it took place.
21     In conclusion, the plaintiff Innovative Sports Management, Inc.'s right to pursue this anti-
22 TV signal piracy lawsuit was based upon its contract with ALJ.  Innovative Sports Management,
23 Inc. breached that contract, however, and failed to fulfill the contractual prerequisites to bring this
24 lawsuit.  As such, there is no standing and therefore no subject matter jurisdiction, and accordingly
25 the Court must dismiss the lawsuit.
26 / / /
27 / / /

**E.     Other Cases that Have Addressed This Issue of the Possible Lack of Standing on the Part of Plaintiff in TV Signal Piracy Cases Are Distinguishable**

There are at least two other TV signal piracy cases that have touched upon the same basic issue that is presented in this motion, namely whether there is a lack of standing on the part of plaintiffs to pursue claims for TV signal piracy based upon a faulty license agreement. Importantly, however, those cases are distinguishable with respect to the timing of the motion and how the issue was raised, as well as the evidence offered, and whereas the courts in those matters did not dismiss the cases the Court should in this case.  Furthermore, the license agreement at issue in this case with Innovative Sports Management, Inc. is even more deficient than the one between J & J Sports Productions, Inc. and Top Rank, for all of the numerous reasons as described herein above.

For example, in the case of *J & J Sports Productions, Inc. v. Richard D. Baylor*, Case No. 5:13-cv-02483-JS (Document 16, filed on 7/25/2013, in the Eastern District of Pennsylvania) the court denied *without prejudice* the 12(b)(1) and 12(b)(6) motion regarding the standing issue. That motion was very early in the case (before discovery) and therefore the court was not inclined to resolve the factual dispute (e.g. whether J & J Sports Productions, Inc. consulted with Top Rank before filing the lawsuit) without any evidence on that matter.  By contrast, in this present case the matter is well into the discovery phase of the litigation and the plaintiff has produced its initial disclosures.  Any documentation in support of plaintiff's assertion of standing should have been included within its Rule 26 initial disclosures (where there is an affirmative obligation for the plaintiff to share its supporting evidence), and can also be submitted in support of its opposition to this 12(c) motion.  See Federal Rule of Civil Procedure 12(d) (stating that in a 12(c) motion that raises issues outside the pleadings the parties must be "given a reasonable opportunity to present all the material that is pertinent to the motion.").  Due to the different procedural posture as the present case and the case of *J & J Sports Productions, Inc. v. Richard D. Baylor*, the Court should now rule on this issue in the present litigation.

/ / /

1	The case of *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* Civil Action No. 07-3850,
2	2009 WL 1886124 (E.D. Pa. June 30, 2009) is similar to the case of *J & J Sports Productions, Inc.*
3	*v. Richard D. Baylor, supra*.  In *4326 Kurz, Ltd.*, but the court did not rule in defendants favor
4	regarding the issue of standing because of the "lack of factual evidence offered by defendants." *Id.*
5	at *13.  By contrast, in this instant case there is evidence being submitted concurrently herewith
6	(see the declaration of attorney Matthew A. Pare and the plaintiff's Rule 26 initial disclosures
7	attached thereto), which demonstrates the lack of standing.  If the plaintiff has evidence to support
8	its claim of standing or that it fulfilled its contractual preconditions to pursue this lawsuit it has an
9	obligation to produce that information in its initial disclosures of evidence, and certainly in
10	response to this instant motion it has ample opportunity to produce that supporting evidence.
11	Furthermore, the case of *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.* Is also
12	fundamentally distinguishable from the instant case and the present motion in that in this case
13	there is a different argument raised in section B, *supra*, namely the rules of intellectual property
14	right laws with regard to the requirement of an "exclusive" license in order to have standing,
15	whereas in *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.* the only issue presented was the
16	possible breach of the licensing contract by J & J Sports Productions, Inc. which called into
17	question its right to sue (although that issue was not resolved in that case due to a lack of
18	evidence.)
19	In conclusion, the other lawsuits that have touched upon the issues presented in this present
20	motion are distinguishable and had no conclusive decisions; therefore the possible lack of standing
21	on the part of Innovative Sports Management, Inc. is really is an issue of first impression that the
22	Court can independently consider and must ultimately rule in favor of defendants for all of the
23	reasons stated herein.
24	/ / /
25	/ / /
26	/ / /
27	/ / /

## III.

## **CONCLUSION**

For all of the above-described reasons, this Court must dismiss the lawsuit of Innovative Sports Management, Inc. There is no standing, and thus no subject matter jurisdiction.

Respectfully submitted.

DATED: August 23, 2013                    LAW OFFICE OF MATTHEW PARE, APC

                                                                By:    /s/ Matthew A. Paré

                                                                       Matthew A. Paré, Esquire
                                                                       Attorney for Defendants

Matthew A. Paré, Esq., California State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on August 23, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following:

Thomas P. Riley, Esq., State Bar No.: 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227
Phone: (626) 799-9797
Fax: (626) 799-9795
e-mail: TPRLAW@att.net

Matthew A. Paré, Esq., California State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

                                                 By:    /s/ Matthew A. Paré
                                                                        Matthew A. Paré, Esquire