1  Matthew A. Paré, Esq., California State Bar No.: 258434
   **LAW OFFICE OF MATTHEW PARE, APC**
2  823 Anchorage Place, Suite 114
   Chula Vista, CA 91914
3  Phone: (619) 869-4999
   Fax: (619) 475-6296
4  e-mail: mattparelawca@gmail.com

5

6

7

8

9                    **UNITED STATES DISTRICT COURT**

10       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11  INNOVATIVE SPORTS MANAGEMENT, )   Case No.: 8:12-cv-01748-TJH-PLA
    INC.,                        )
12                               )   **NOTICE OF MOTION AND MOTION FOR**
              Plaintiff,         )   **SUMMARY JUDGMENT IN FAVOR OF**
13                               )   **DEFENDANTS; FILED CONCURRENTLY**
    vs.                          )   **WITH DECLARATIONS OF RENZO**
14                               )   **MACCHIAVELLO AND ATTORNEY**
    RENZO MACCHIAVELLO, individually )  **MATTHEW A. PARE WITH EXHIBITS**
15  and d/b/a RENZO'S TASTE OF PERU; and )  **ATTACHED THERETO; AND**
    MACCHIAVELLO, LLC, an unknown )   **STATEMENT OF UNCONTROVERTED**
16  business entity d/b/a RENZO'S TASTE OF )  **FACTS AND CONCLUSIONS OF LAW,**
    PERU,                        )   **FILED CONCURRENTLY**
17                               )
              Defendants.        )   *[Pursuant to Federal Rules of Civil Procedure,*
18          JURY TRIAL DEMANDED  )   *Rule 56, and L.R. 56-1]*
                                 )
19                               )   Date:  Monday, March 24, 2014
                                 )   Time:  9:00 a.m.
20                               )   Courtroom:  17
                                 )   Judge: Honorable Terry J. Hatter, Jr.
21  _____ )   UNDER SUBMISSION

22

23  TO THE HONORABLE TERRY J. HATTER, JR., PLAINTIFF INNOVATIVE SPORTS

24  MANAGEMENT, INC., AND ITS ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that on Monday, March 24, 2014, at 9:00 a.m., or as soon

26  thereafter as this matter may be heard by the above-entitled United States District Court, located at

27  312 North Spring Street, Courtroom 17, Los Angeles, CA 90012-4701, defendants Renzo

1  Macchiavello and Macchiavello, LLC d/b/a Renzo's Taste of Peru will present their motion for

2  summary judgment.  This motion is being made pursuant to Federal Rules of Civil Procedure, Rule

3  56, and L.R. 56-1.  This motion is made following the conference of counsel pursuant to L.R. 7-3

4  which took place on February 11, 2014.

5        The motion is based on this Notice of Motion and Motion, the Memorandum of Points and

6  Authorities filed concurrently, the declarations of Renzo Macchiavello and attorney Matthew A.

7  Pare, with exhibits, filed herewith, the statement of uncontroverted facts and conclusions of law,

8  and upon such other matters as may be presented to the Court at the time of the hearing.

9  DATED: February 18, 2014                         LAW OFFICE OF MATTHEW PARE, APC

10

11                                                  By:     /s/ Matthew A. Paré
                                                    _____
12                                                  Matthew A. Paré, Esquire
                                                    Counsel for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND FACTUAL BACKGROUND**

This case stems from the exhibition of a television program, specifically the Peru v. Chile soccer game on October 11, 2011, at the establishment known as Renzo's Taste of Peru.  The plaintiff in this action, Innovative Sports Management, Inc. alleges that it has the exclusive closed circuit distribution rights to the subject television program, and defendants did not pay Innovative Sports Management, Inc. for the rights to show the subject television program but nevertheless exhibited it in the place of business.  Plaintiff further alleges that defendants willfully and intentionally stole the TV signal and did so for the purpose of commercial advantage or private financial gain.

The real facts of this case can be summarized as follows: On the day in question an employee at Renzo's Taste of Peru connected a laptop computer to a TV and viewed the soccer match through the website JustinTV.  The signal in this case came from the internet, and there was no signal theft nor interception.  Furthermore, there was no intent to profit from displaying this soccer game on TV, nor any actual profit attributable to it.  It was really just for the personal enjoyment of the staff, and there were only a handful of people there at the time.  There was no advertisement that the event was going to be shown, and no cover charge that was charged or premium on food and beverages.  In fact, there was only $291.75 in cash sales for that entire day.  The laptop computer was hooked up to one TV at the business for better viewing.  There was no signal theft at all, nor any wrongdoing on the part of defendants.

Defendants have numerous complete defenses to plaintiff's claims for TV signal piracy and the complaint entirely in this case.  For example, the underlying federal TV signal piracy statutes, 47 U.S.C. section 605 and 47 U.S.C. section 553, do not apply to signals received over the internet.  Defendants were also specifically authorized to view the subject soccer game.  There was also no signal interception.  Defendants are also entitled to summary judgment due to the problems with the license agreement regarding this subject TV program, as detailed in defendants' motion for

1  judgment on the pleadings.  Defendant Renzo Macchiavello is also entitled to summary judgment

2  in his individual capacity due to the business entity Macchiavello, LLC.  For these reasons and the

3  others discussed herein below, defendants are entitled to a complete summary judgment in their

4  favor.

5        Alternatively, if complete summary judgment is not granted defendants are entitled to

6  partial summary judgment in their favor regarding each and every one of plaintiff's individual

7  counts (causes of action), and the claims for enhanced statutory damages, punitive (exemplary)

8  damages, restitution damages, its claim for attorney's fees, and the duplicative recovery requested

9  by plaintiff.  Finally, if any of plaintiff's state law claims survive this motion for summary

10  judgment this Court should not continue to exercise jurisdiction.

11  **II.**

12  **THE STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

13        Federal Rules of Civil Procedure, Rule 56 provides in pertinent part as follows:

14
15  A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material
16  fact and the movant is entitled to judgment as a matter of law.

17  **III.**

18  **ARGUMENT**

19  **A.**    **Defendants Are Entitled to Summary Judgment in Their Favor Because**

20          **47 U.S.C. section 605 and 47 U.S.C. section 553 Do Not Apply to Signals**

21          **Received Over the Internet**

22        The case of *Zuffa, LLC v. Justin.tv, Inc*., 838 F.Supp.2d 1102 (D. Nev. 2012) stands for the

23  proposition that claims for TV signal piracy under 47 U.S.C. section 605 and 47 U.S.C. section

24  553 do not include circumstances where the defendants acquired the signal via the internet.  This

25  issue was also mentioned in the summary judgment decision in the case of *Joe Hand Promotions,*

26  *Inc. vs. Jacob Evans Albright d/b/a Miners Ranch Saloon*, 2013 U.S. Dist. LEXIS 79268 (June 4,

27  2013, Eastern Dist. of CA) where the court stated that evidence that the program was received over

1    the internet would be a defense.  *Id.* at *15.

2        There is a wealth of authority that indicates that 47 U.S.C. section 605 applies to satellite

3    signals and 47 U.S.C. section 553 applies to cable signals.  There are literally hundreds of cases

4    that state that rule of law; just as a few, see e.g., *J & J Sports Productions, Inc. v. Man Thi Doan*

5    (N.D. Cal. 2008) WL 4911223; *J & J Sports Productions, Inc. v. Steve Sang Ro* (2010) U.S. Dist.

6    LEXIS 21425, citing *J & J Sports Productions, Inc. v. Manzano* (2008) U.S. Dist. LEXIS 84931,

7    which states that "a signal pirate violates section 553 if he intercepts a cable signal, he violates

8    section 605 if he intercepts a satellite broadcast.  But he cannot violate both by a single act of

9    interception."

10       To further bolster this notion that neither 47 U.S.C. section 605 nor 47 U.S.C. section 553

11   apply to a signal available through the internet §605 was drafted in 1934, and §553 was drafted in

12   1984, at a time when this technology did not even exist.  It is inconceivable that the statutory intent

13   would be to cover signals on the internet, and there is no case law in the country indicating that

14   these federal statutes apply to internet signals.

15       In this case, as the declaration of Renzo Macchiavello confirms, the signal for the soccer

16   game in question was received over the internet from the website JustinTv.  The laptop computer

17   was connected to a TV, but there was no cable or satellite signal that was intercepted, received, or

18   exhibited.  As such, there is no case for TV signal piracy.   The affidavit of plaintiff's own private

19   investigator also confirms that the signal came from the internet as he described a laptop computer

20   connected to the TV, and coincidentally the website used in this case, JustinTv, was also the

21   defendant in the above-cited case of *Zuffa, LLC v. Justin.tv, Inc*., 838 F.Supp.2d 1102 (D. Nev.

22   2012).

23       **B.    Defendants Are Entitled to Summary Judgment in Their Favor Because of**

24           **Being Authorized to Receive the Signal**

25       The statutory language of 47 U.S.C. section 605 and 47 U.S.C. section 553 itself indicates

26   that a fundamental element that the plaintiff must prove is that the defendant was "unauthorized"

27   (in its reception of the signal).  For example, section 605 states in part that "[n]o person not being

1   *authorized* by the sender shall intercept any radio communication and divulge or publish the

2   existence, contents, substance, purport, effect, or meaning of such intercepted communication to

3   any person."  (Emphasis added).  Similarly, section 553 states in part that "[n]o person shall

4   intercept or receive or assist in intercepting or receiving any communications service offered over

5   a cable system, unless specifically *authorized* to do so by a cable operator…"  (Emphasis added.)

6   The bottom line is that in order for the plaintiff to prevail in a TV signal piracy case one of the

7   necessary elements to prove is that defendant was unauthorized to receive the signal and display

8   the programming.

9       In the case of *J & J Sports Productions, Inc. v. Schmalz*, 745 F.Supp.2d 844 (S.D. Ohio,

10  Sept. 17, 2010) the court granted summary judgment in favor of defendant when the defendant was

11  authorized by the signal provider to receive the signal.  In *Schmalz*, the defendant obtained the TV

12  signal for a boxing match from the signal provider Time Warner Cable Company (TWC), and

13  displayed the program at a place of business.  In that case, there was no equipment used to steal or

14  intercept the signal, rather it was ordered from Time Warner Cable.  *Id*. at 846.  The defendants in

15  *Schmalz* were specifically authorized to receive the signal from the cable operator, namely TWC.

16  *Id*. at 850.  Given that the signal was obtained and purchased from TWC, the cable operator, there

17  was no statutory violation and the court granted summary judgment in favor of defendants.  *Id*. at

18  850-851. Regardless of whether these are "strict liability" statutes, there is no statutory violation if

19  the defendant was authorized to receive the signal.  *Id*.  The court in *Schmalz* also made clear that

20  when considering if the cable operator authorized the defendant to show a particular program, the

21  plaintiff does not need to have authorized the signal provider to do so, and in that case J & J Sports

22  Productions, Inc. in fact did not authorize the cable company to provide the signal to the

23  defendant.  *Id*. at 851.

24      Similar to the case of *Schmalz*, defendants Renzo Macchiavello and Macchiavello, LLC

25  herein lawfully obtained this signal by a provider who provided the authorization.  In particular, it

26  was a subscription to JustinTv of one of the employees.  There was no extra or illegal equipment

27  that was used or signal interception that took place.  Just as the defendants in *Schmalz* were

1    specifically authorized to receive the signal from their signal provider, so too were defendants

2    herein, and for that reason there is no violation of 47 U.S.C. section 605 or 47 U.S.C. section 553.

3        **C.      Defendants Are Entitled to Summary Judgment In Their Favor Because There**

4                **was no Signal Interception**

5            A fundamental required element necessary for plaintiffs to prove in TV signal piracy cases

6    is that there was an "interception." *Premium Sports Inc. vs. Connell*, 2012 WL 691891 (S.D.N.Y.

7    March 1, 2012).  In *Premium Sports, Inc.* the court granted summary judgment in favor of

8    defendants due to plaintiff's failure to demonstrate that defendants actually "intercepted" the

9    program as required by the statute.  In that case defendants admitted using a Slingbox to obtain the

10   signal, and the court did not consider that an interception that would allow plaintiff to recover for

11   statutory signal piracy under 47 U.S.C. §605.  As the court stated, "[t]he critical and dispositive

12   legal point is that in order for there to be a violation of 47 U.S.C. § 605(a), there must be an

13   "interception" of a signal or transmission." *Id*. at *2.  In order to prevail on a §605 or §553 claim

14   the plaintiff must prove that defendants "intercepted" the signal; contrary to plaintiff's desires and

15   assertions otherwise, it is simply insufficient to prove that a TV program was received or

16   exhibited.

17           Other cases of TV signal piracy have supported the notion that an "interception" is a

18   required element.  See also, *Cablevision of Michigan, Inc. v. Sports Palace*, No. 93-1737, L994

19   U.S. App. LEXIS 13914, at. *11-13 (5th Cir. June 5, 1994) (videotaping something and then

20   showing it minutes later was not a violation because no interception); *Katz v. United States*, 389

21   U.S. 347, (1967); *Goldman v. United States*, 316 U.S. 129, 134 (1942); *That's Entmt. V.

22   Anciano's, Inc.*, No. 94 C 7199, 1996 WL 514989, at *1 (N.D. Ill. 1996); *Smith v. Cincinnati v.

23   Post & Times-Star*, 475 F.2d 740, 741 (6th Cir. 1973).  All of this authority suggests that in order

24   for there to be a statutory TV signal piracy violation there must be an interception of the signal, not

25   merely receiving or exhibiting the programming.  In this case plaintiff has no evidence of an

26   interception  - and in fact there was no interception - therefore summary judgment must be granted

27   in favor of defendants.

28

1   **D.    Defendants Are Entitled to Summary Judgment in Their Favor Regarding the**

2   **Conversion Claim of Plaintiff**

3   The analysis above focuses on the elements necessary to establish a case for statutory TV

4   signal piracy claims under 47 U.S.C. section 605 and 47 U.S.C. section 553.  Defendants are also

5   entitled to summary judgment in their favor regarding plaintiff's claim for conversion too.

6   Plaintiff Innovative Sports Management, Inc.'s claim for conversion (count 3) against defendants

7   herein is predicated upon the alleged violations of 47 U.S.C. section 605 and 47 U.S.C. section

8   553, in that plaintiff contends defendants' statutory violations constituted a disposition of the

9   subject program in a manner inconsistent with plaintiff's rights in the program.  Inasmuch as

10  defendants are successful in their request for summary judgment in their favor regarding the

11  alleged violations of 47 U.S.C. section 605 and 47 U.S.C. section 553, therefore, defendants are

12  also entitled to a judgment in their favor regarding plaintiff's claim for conversion.  See *J & J*

13  *Sports Productions, Inc. v. Flores*, 2012 WL 6608915 (E.D. Cal., December 18, 2012, at *11)

14  (granting summary judgment as to plaintiff's conversion claim following defendants' successful

15  summary judgment as to the plaintiff's claims for statutory signal piracy); See also, *Joe Hand*

16  *Promotions, Inc. v. Alvarado*, 2011 WL 1740536 at *8 (E.D.Cal., May 4, 2011) (also granting

17  summary judgment in favor of defendants as to plaintiff's same state law claims and noting that in

18  the absence of the statutory signal piracy claims there was no such claims).

19  **E.    Defendants Are Entitled to Summary Judgment In Their Favor as to**

20  **Plaintiff's Claim for Violation of California Business & Professions Code**

21  **§17200 and Plaintiff's Requests for Restitution Damages and Attorney's Fees**

22  **Related Thereto**

23  Pursuant to Section 17203, the only available remedy (other than an injunction) for a

24  Section 17200, et seq. claim is to "restore to any person in interest any money or property, real or

25  personal, which may have been acquired by means of such unfair competition."  In other words,

26  under section 17200 a plaintiff may recover only restitution.  See *Bronco Wine Company v. Frank*

27  *A. Logoluso Farms* (1989) 214 Cal.App.3d 699 (as cited in *Kingvision Pay-Per-View, Ltd. v.*

1   *Rivers* 2000 U.S. Dist. LEXIS 4338, p. 11.)  Here, plaintiff has no evidence of any money

2   whatsoever that was acquired by defendants by unfair competition (nor any money received

3   whatsoever specifically related to the alleged exhibition of this subject TV program), so there can

4   be no recovery by the plaintiff under that count.  As such, moving defendants are entitled to

5   summary adjudication in their favor on this claim, or at least specifically the request for restitution

6   made pursuant to this claim.

7          Also in conjunction with plaintiff's Section 17200 claim was a request for attorney's fees

8   pursuant to California Code of Civil Procedure §1021.5.  However, it is clear that plaintiff does

9   not meet the requirements under that section to warrant an award of attorney's fees.  In order to

10  justify an award of attorney's fees under that section, among other things there must be

11  enforcement of an important right affecting the public interest if and a significant benefit, whether

12  pecuniary or nonpecuniary, that has been conferred on the general public or a large class of

13  persons.  Here, it is obvious that the statutory requirements to justify an award of attorney's fees

14  under that section are not met by any stretch of the imagination given that at best the plaintiff

15  Innovative Sports Management, Inc. is merely trying to protect its own financial interests.  As

16  such, moving defendants are also entitled to summary adjudication specifically as to plaintiff's

17  claim for the recovery of attorney's fees pursuant to California Code of Civil Procedure §1021.5.

18         Therefore, this Court should grant summary judgment in defendants' favor as to plaintiff's

19  claim for violation of California Business & Professions Code section 17200, and plaintiff's claim

20  for attorney's fees related thereto.

21   **F.     The Court Should Grant Partial Summary Judgment in Favor of Defendants**

22   **as to Plaintiff's Claims for Enhanced Statutory Damages**

23         The primary statutes that the plaintiff Innovative Sports Management, Inc. is using to sue

24  defendants under in this case are 47 U.S.C. section 605 and 47 U.S.C. section 553, the federal TV

25  signal piracy statutes.  The relevant part of 47 U.S.C. section 605 regarding the types of damages

26  that the plaintiff can recover is as follows:

27   / / /

28

(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

    (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

    (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. section 605(e)(3)( C).

In other words, under this statutory scheme there is a normal range of statutory damages from $1,000.00 to $10,000.00, and under extraordinary circumstances in both directions the statutory damages can be reduced to $250.00, or increased over $10,000.00 up to $100,000.00. The statutory damages above $10,000.00 is the "enhanced statutory damages."

The relevant part of the statute 47 U.S.C. section 553 is extremely similar and provides in pertinent part as follows:

(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

    (i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

    (ii) the party aggrieved may recover an award of statutory damages for all violations

1    involved in the action, in a sum of not less than $250 or more than $10,000 as the
     court considers just.

2    (B) In any case in which the court finds that the violation was committed willfully and for
     purposes of commercial advantage or private financial gain, the court in its discretion may

3    increase the award of damages, whether actual or statutory under subparagraph (A), by an
     amount of not more than $50,000.

4    (C) In any case where the court finds that the violator was not aware and had no reason to

5    believe that his acts constituted a violation of this section, the court in its discretion may
     reduce the award of damages to a sum of not less than $100.

6    47 U.S.C section 553(c)(3).

7        In other words, under this statutory scheme (very similar to the other statute) there is a

8    normal range of statutory damages from $250.00 to $10,000.00, and under extraordinary

9    circumstances in both directions the statutory damages can be reduced to $100.00, or increased

10   over $10,000.00 up to $50,000.00.  The statutory damages above $10,000.00 is the "enhanced

11   statutory damages."  Although the amounts under 47 U.S.C. section 553 are different than 47

12   U.S.C. section 605, in concept it is the same logic that under extraordinary circumstances the

13   plaintiff could recover enhanced statutory damages over $10,000.00.

14       In this case the Court should grant partial summary judgment as to plaintiff's claims for

15   enhanced statutory damages.  Again, the specific parts of these statutes that identify the

16   requirements for enhanced statutory damages under the federal TV signal piracy laws are as

17   follows:

18       47 U.S.C. 605(e)(c)(ii) provides as follows:

19
20   In any case in which the court finds that the violation was committed willfully and for
     purposes of direct or indirect commercial advantage or private financial gain, the court in
     its discretion may increase the award of damages, whether actual or statutory, by an amount

21   of not more than $100,000 for each violation of subsection (a) of this section.

22       47 U.S.C. §553( c)(3)(B) provides as follows:

23
24   In any case in which the court finds that the violation was committed willfully and for
     purposes of commercial advantage or private financial gain, the court in its discretion may
     increase the award of damages, whether actual or statutory under subparagraph (A), by an

25   amount of not more than $50,000.

26       In this case, there is simply no evidence that defendants committed a "willful" violation of

27   either of these statutes for the purpose of commercial advantage or private financial gain, and thus

1    plaintiff Innovative Sports Management, Inc. is not entitled to recover those enhanced statutory

2    damages. See the Declarations of Renzo Macchiavello and Attorney Matthew Pare, filed

3    concurrently, and the discovery responses of plaintiff attached thereto.

4         The term "willfully" indicates a certain mindset or *mens rea*.  In other words, it must have

5    been done intentionally or on purpose in order to justify an award of enhanced statutory damages.

6    In the present case, as the evidence reveals, there is simply no supporting evidence of any kind to

7    indicate that defendants committed a "willful" violation in this case to justify an award of

8    enhanced statutory damages.

9         Case law has also instructed that willfulness is defined as "disregard for the governing

10   statute and an indifference for its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S.

11   111, 126–27 (1985).  In the context of TV signal piracy cases, in order to arrive at an enhanced

12   damage figure, courts have considered factors such as: (1) the number of violations; (2)

13   defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether

14   defendant advertised for the event; and (5) whether defendant collected a cover charge on the night

15   of the event. *Joe Hand Promotions, Inc. v. Kaczmar*, 2008 WL 4776365, *2 (N.D.Ill. Oct.29,

16   2008).  The court in *Integrated Sports Media, Inc. v. El Guadalajara, Inc.*, 2011 WL 4434165, at

17   *2 (E.D.N.Y. Aug. 30, 2011) described these factors as (i) repeated violations; (ii) significant

18   actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv)

19   defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums

20   for food and drinks, citing *J & J Sports Productions, Inc. vs. Hot Shots*, 2010 WL 3522809, at *2;

21   see also *J & J Sports Productions, Inc. vs. Welch*, 2010 WL 4683744, at *4.

22        In this case, there is also evidence establishing the presence of any of the factors identified

23   above to justify an award of enhanced statutory damages.  The statutory language makes clear that

24   only certain cases of alleged TV signal piracy justify an award of enhanced statutory damages, not

25   all cases, and thus in order to give meaning to the statutory language itself there cannot be

26   enhanced damages in a case like this where there are no aggravating circumstances.  It is

27   anticipated that the plaintiff will suggest that signals do not descramble spontaneously, but that

1  type of approach for determining if there is a willful violation is contrary to the statutory language

2  itself because that approach would mean every case of alleged TV signal piracy is willful and

3  clearly the statute contemplates that only the more severe cases are willful to justify the enhanced

4  statutory damages.

5      Therefore, this Court should at least grant partial summary judgment in defendants' favor

6  as to plaintiff's claims for enhanced statutory damages under the federal TV signal piracy statutes.

7      **G.    The Court Should Grant Partial Summary Judgment in Favor of Defendants**

8      **as to Plaintiff's Claim for Punitive Damages**

9      California Civil Code section 3294 is the applicable state law regarding punitive damages

10  in California.  Although the plaintiff did not specifically cite this statute in requesting exemplary

11  and punitive damages, this is the authority that potentially would authorize such damages.  It

12  provides in pertinent part as follows:

13      In an action for the breach of an obligation not arising from contract, where it is proven by
14      clear and convincing evidence that the defendant has been guilty of oppression, fraud, or
        malice, the plaintiff, in addition to the actual damages, may recover damages for the sake
15      of example and by way of punishing the defendant.  California Civil Code section 3294(a).

16  The statute goes on to define oppression, fraud, and malice as follows:

17
18      (1) "Malice" means conduct which is intended by the defendant to cause injury to the
        plaintiff or despicable conduct which is carried on by the defendant with a willful and
        conscious disregard of the rights or safety of others.
19      (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust
20      hardship in conscious disregard of that person's rights.
        (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material
21      fact known to the defendant with the intention on the part of the defendant of thereby
        depriving a person of property or legal rights or otherwise causing injury.
22

23      In this case, particularly given the above-described standards, there is no evidence to

24  support plaintiff's claim for punitive or exemplary damages, and thus partial summary judgment as

25  to that request for damages is appropriate.  Therefore, this Court should at least grant partial

26  summary judgment in defendants' favor as to plaintiff's claim for punitive damages.

27  / / /

1   **H.    The Plaintiff Cannot Recover the Duplicative Recovery it Has Pled and Prayed**

2   **for and Thus the Court Should Grant Partial Summary Judgment in Favor of**

3   **Defendants in that Regard**

4   **1.    The Plaintiff Cannot Recover for Both Violation of 47 U.S.C. section**

5   **605 and 47 U.S.C. section 553**

6   Overwhelming authority supports the proposition that plaintiffs cannot recover under both

7   of these sections in the same case.  See e.g., *Cablevision v. Skyes* (2nd Cir. 1993) 997 F.2d 998;

8   *Universal Sports Network, Inc. v. Jiminez* (N.D. Cal. 2002) WL 31109707; *Kingvision Pay Per*

9   *View v. Ortega* (N.D. Cal. 2002) WL 31855367; *Kingvision Pay-Per-View v. Guzman* (N.D. Cal.

10  2009) WL 1475722; *Joe Hand Promotions, Inv. v. Pete* (N.D. Cal. 1999) WL 638215; *Don King*

11  *Prods. v. Maldonado* (N.D. Cal. 1996) WL 682006; *Joe Hand Promotions, Inc. v. Dailey* (N.D.

12  Cal. 2003) WL 1342998; *Kingvision Pay-Per-View, Ltd. v. Backman* (N.D. Cal. 2000) 102

13  F.Supp.2d 1196, 1197.  These cases are only some of the many, many more that could be cited for

14  this particular rule of law.  Indeed, many practitioners in this area of law will acknowledge in their

15  pleadings (i.e. complaint) that the plaintiff can only recover for one of those sections, not both, but

16  some discovery is necessary in order to ascertain what is the appropriate section.

17  It is well established that a defendant violates 47 U.S.C §553 if he intercepts a cable signal,

18  and he violates 47 U.S.C. §605 if he intercepts a satellite broadcast.  See e.g., *J & J Sports*

19  *Productions, Inc. v. Man Thi Doan* (N.D. Cal. 2008) WL 4911223; *J & J Sports Productions, Inc.*

20  *v. Steve Sang Ro* (2010) U.S. Dist. LEXIS 21425, citing *J & J Sports Productions, Inc. v. Manzano*

21  (2008) U.S. Dist. LEXIS 84931, which states that "a signal pirate violates section 553 if he

22  intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast.  But he

23  cannot violate both by a single act of interception."  Therefore, the simple reason that a defendant

24  cannot be liable for both sections at once is because these two laws apply to different types of

25  signals (satellite versus cable).

26  In conclusion, defendants respectfully request a legal ruling that the plaintiff in this instant

27  matter can at best only recover under either 47 U.S.C. section 605 or 47 U.S.C. section 553, not

1    both.

2          **2.**     **The Plaintiff Cannot Recover for Both Conversion and Statutory**

3                  **Signal Piracy (47 U.S.C. section 605 and 47 U.S.C. section 553)**

4         It is well established that in a television signal piracy case the plaintiff cannot recover

5    duplicative recovery for both conversion and violation of 47 U.S.C. §605, it must be one or the

6    other.  There is ample authority for that rule of law.  See e.g., *J & J Sports Productions, Inc. v.*

7    *Ferreyra* (2008) WL 4104315 at 1 ("Inasmuch as plaintiff seeks statutory damages rather than

8    actual damages, plaintiff's request for damages for conversion should be denied.)  See also,

9    *Garden City Boxing Club, Inc. v. Frezza* (2007) 476 F. Supp.2d 135, 140 (denying recovery for

10   conversion on top of 47 U.S.C. §605 because it would be duplicative); *J & J Sports Prods. v.*

11   *Hernandez* (2010) U.S. Dist. LEXIS 48191 (stating that "an award for conversion damages would

12   be duplicative"); *Joe Hand Promotions, Inc. v. Dock Street Enters. Inc.*, No. 11-1973, 2011 WL

13   6141058, at *5 n. 5 (D.Md., Dec. 8, 2011.);  *J & J Sports Prod., Inc. v. J.R. 'Z Neighborhood*

14   *Sports Grille, Inc.*, No. 9-3141, 2010 WL 1838432, at *2 (D.S.C. April 5, 2010); *J & J Sports*

15   *Productions, Inc. vs. Romenski*, 845 F.Supp.2d 703 (2012).  These cases are only some of the

16   many more that could be cited for this particular rule of law.  It is acknowledged that there are also

17   many examples of default judgments granting such duplicative recovery under conversion and

18   statutory signal piracy claims, but those matters are distinguishable because they are default

19   judgments and this particular issue is not addressed specifically in such cases – the courts

20   sometimes merely award what the plaintiff is requesting in such circumstances.

21        In addition to the numerous examples of case law indicating that plaintiff cannot recover

22   for both conversation and statutory signal piracy, this idea is also supported by the statutory

23   language of 47 U.S.C. section 605 itself.  In particular, the statute under 47 U.S.C. section

24   605(e)(C)(i) indicates that "Damages awarded by any court under this section shall be computed,

25   at the election of the aggrieved party, in accordance with either of the following subclauses. . ."

26   (emphasis added) and then goes on to describe either "actual damages" or "statutory damages."

27   To allow the plaintiff to recover for conversion damages on top of the statutory damages would

1    effectively be disregarding the notion of plaintiff making an election and allowing for duplicative

2    recovery.

3         In conclusion, defendants respectfully request a legal ruling that the plaintiff in this instant

4    matter can at best only recover under either conversion (count 3) or one of the signal piracy

5    statutes (counts 1 and 2, violation of 47 U.S.C. section 605 and 47 U.S.C. section 553), not both.

6    **I.      Individual Defendant Renzo Macchiavello Should Be Granted Summary**

7         **Judgment in His Favor Due to the Business Entity Macchiavello, LLC**

8         Defendants strenuously contend that summary judgment should be granted to all of them

9    for the reasons articulated above.  Even if, however, the Court is inclined to possibly not grant

10   summary judgment in favor of defendant Macchiavello, LLC it is clear that at a minimum the

11   individual defendant Renzo Macchiavello should be granted summary judgment in his favor as

12   there is no reason to assert individual liability in this case (i.e. pierce the corporate veil) when there

13   is also a business entity defendant involved.

14        In cases of TV signal piracy there are at least three approaches or legal standards that have

15   been used to ascertain whether piercing the corporate veil is appropriate to hold individual

16   defendants liable when there is also a business entity defendant such as a corporation or LLC.

17   First, there is the "no distinction" approach.  That test is basically whether or not there was "no

18   distinction" between the individual's actions and that of the corporation.  See e.g. *Comcast of*

19   *Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947-948 (8th Cir. 2007); *Joe Hand*

20   *Promotions, Inc. v. Sharp*, 885 F.Supp.2d 953, 956 (D.Minn., August 14, 2012.)  Second, there is

21   the "traditional" approach, where you would look at the Black Letter law elements such as whether

22   there was insufficient capitalization and a failure to observe corporate formalities, and whether

23   there was a co-mingling of funds between the individual and the corporation, for example.  Third,

24   there is the "benefit and control" approach.  This approach analyzes whether the individual

25   defendant authorized the violations or had both a right and ability to supervise the violations and a

26   "strong financial interest" in such activities.  See e.g., *J & J Sports Productions, Inc. v. Betancourt*

27   2009 WL 3416431 at *2 (S.D.Cal., October 20, 2009); see also *J & J Sports Productions, Inc. v.*

1   *Flores*, 2012 WL 6608915 at *4 (E.D.Cal., December 18, 2012.) (noting that this rule applies to

2   analyze whether to hold individual defendants liable when there is also a corporate defendant in a

3   TV signal piracy case.)

4          In analyzing whether there should be individual liability in TV signal piracy cases with a

5   corporate defendant courts have been somewhat stern towards the plaintiffs.  For example, in the

6   case of *J & J Sports Productions, Inc. v. Kevin Daley* (2007) U.S. Dist. LEXIS 49839 at *10 the

7   United States District Court for the Eastern District of New York did not hold the defendant

8   (Daley) liable in his individual capacity in a television signal piracy case and cautioned that "J&J

9   should in the future take care not to sue individuals without any reasonable basis for so doing."

10   The court stated as follows:

11

12          There is no evidence that Daley had any knowledge that the Event would be exhibited at
           Kev's, that he had any control over what was being displayed on its television when Larkin
13          visited, or that he derived any benefit from the fact that the Event was displayed. Nor does
           logic support the inference that Daley as an "officer, director, shareholder and/or principal"
14          of Kev's had the kind of control J&J asserts. . . . there is nothing in the record to
           demonstrate which of those various positions, if any, Daley actually held. As a result, there
15          is no basis to assume that Daley enjoyed supervisory control (a shareholder or director
           might not have such authority), or that he had a financial stake in the business (an officer or
16          director might not have such an interest). In short, there is nothing other than speculation to
           support the conclusion that Daley played any part in the violations of the FCA committed
17          by Kev's, and even less to support the conclusion that any role he did play would warrant
           imposing individual liability.
18

19          In another television signal piracy case, *J & J Sports Productions, Inc. v. 291 Bar &*

20   *Lounge, LLC* (E.D.N.Y. 2009) 648 F.Supp.2d 469, 473, the court again found that individual

21   liability on the part of the defendant was not appropriate.  The Court stated in part as follows:

22

23          J&J asserts liability against both the corporate defendant and Dennis Caba, individually,
           who is alleged to be the owner of 291 Bar. See Complaint. P 6. This, however, constitutes
24          the  [*6] entire extent of the allegations against Mr. Caba individually. Individual liability
           under the Cable Act requires that the individual authorize the underlying violations. See
25          J&J Sports Productions, Inc. v. Benson, No. 06-CV-1119, 2007 U.S. Dist. LEXIS 21779,
           2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007). Put differently, the complaint must
26          establish that the individual had a "right and ability to supervise" the violations, as well as
           an obvious and direct financial interest in the misconduct. Softel, Inc., v. Dragon Medical
27

1   and Scientific Communications, Inc., 118 F.3d 955, 971 (2d Cir. 1997). The complaint
2   here makes no such allegations. In such circumstances, it would not be appropriate to hold
    an individual jointly and severally liable along with the business entity. See generally J&J
3   Sports Productions v. Daley, No. 06-CV-238, 2007 U.S. Dist. LEXIS 49839, (E.D.N.Y.
    Feb. 15, 2007) (discussing and applying the legal bases for imposing individual liability in
4   cable theft cases). In Daley, the plaintiff made even more extensive allegations of control
    and supervision on the part of the individual owner than in the instant case, but the court
5   nevertheless declined to extend individual liability to the defendant. Id. (declining to
    impose individual  [*7] liability in spite of conclusory allegations in complaint that
6   individual had "supervisory control over the infringing activities");

7   The Court in 291 Bar & Lounge, LLC went on to explain that the plaintiff in that case

8   made no allegation that defendant Mr. Caba was present for the violation, that he authorized or

9   controlled it, or that he reaped commercial profit from it.  Similar to the court's opinion in Kevin

10  Daley, the court in 291 Bar & Lounge, LLC again cautioned the plaintiff as follows: "To the extent

11  that J&J wishes to assert liability against an individual in the future, it should make adequately

12  detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership

13  of the offending entity."  The court went on to state that quite simply that "[i]f the plaintiff wishes

14  to assert liability against an individual, it must adduce an adequate basis for doing so."  Id.

15      Here, in this case, regardless of which of the three legal approaches this Court takes to

16  evaluate possible individual liability there is no basis to hold defendant Renzo Macchiavello

17  individually liable.  There is no evidence that there is "no distinction" between the business entity

18  and the individuals.  There is no evidence of traditional piercing corporate veil elements such as

19  undercapitalization and lack of following corporate formalities.  Finally, there is no evidence that

20  this individual defendant authorized a violation, controlled the violation or supervised it, or

21  derived any benefit from it whatsoever (let alone had a strong financial interest.)

22      Therefore, this Court should grant summary judgment in favor of the individual defendant

23  Renzo Macchiavello at a bare minimum.

24      **J.      Defendants Should be Granted Summary Judgment Because of the Problems**

25              **with Plaintiff's License Agreement Regarding this Subject TV Program**

26      On August 23, 2013, defendants filed a motion or judgment on the pleadings in this case

27  arguing that the case should be dismissed due to lack of subject matter jurisdiction due to

1   deficiencies in the plaintiff's license agreement regarding the subject TV program (basically the

2   non-exclusivity of the license as well as the difference between Integrated Sports Management,

3   Inc. and Innovative Sports Management, Inc.).  This issue has been thoroughly briefed and the

4   Court initially granted defendants' motion.  If for any reason this Court is inclined to consider

5   those arguments in a motion for summary judgment instead defendants hereby refer to and

6   incorporate by reference herein those arguments.

7   **K.      If This Court is Inclined to Not Grant Summary Judgment in Defendants'**

8   **Favor Regarding Plaintiff's State Law Claims Only This Court Should Not**

9   **Continue to Exercise Jurisdiction**

10   The plaintiff's complaint invokes the Court's supplemental subject matter jurisdiction

11   under 28 U.S.C. section 1367 regarding the state law claims for conversion and unfair business

12   practices.  If the Court grants summary judgment in favor of defendants regarding the federal

13   counts (claims for violation of 47 U.S.C. section 605 and 47 U.S.C. section 553) but not regarding

14   the two other state law claims (although it should for the reasons provided herein above), the Court

15   should not continue to exercise supplemental jurisdiction over the remaining state law claims.  28

16   U.S.C. section 1367(c)(1)-(4).  When the federal claims have been dismissed from a lawsuit, the

17   balance of factors weigh in favor of declining supplemental jurisdiction over the remaining state

18   law claims.  *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *United Mine Workers of*

19   *America v. Gibbs*, 383 U.S. 715 at 726 (1966).  Therefore, this Court should dismiss the plaintiff's

20   complaint completely.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

1

## IV.

2

## __CONCLUSION__

3        For all of the reasons discussed above, this Court should grant summary judgment in favor

4    of defendants.

5        Respectfully submitted.

6    DATED: February 18, 2014                    LAW OFFICE OF MATTHEW PARE, APC

7

8                                          By:    /s/ Matthew A. Paré
                                                 _____
9                                                Matthew A. Paré, Esquire
                                                 Counsel for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1   Matthew A. Paré, Esq., California State Bar No.: 258434
2   **LAW OFFICE OF MATTHEW PARE, APC**
    823 Anchorage Place, Suite 114
3   Chula Vista, CA 91914
    Phone: (619) 869-4999
4   Fax: (619) 475-6296
    e-mail: mattparelawca@gmail.com

5                         **CERTIFICATE OF SERVICE**

6
7           I hereby certify that on February 18, 2014, I electronically filed the foregoing with the Clerk

8   of the Court using the ECF System which sent notification of such filing to the following:

9   Thomas P. Riley, Esq., California State Bar No.: 194706
    **LAW OFFICES OF THOMAS P. RILEY, P.C.**
10  First Library Square
    1114 Fremont Avenue
11  South Pasadena, CA 91030-3227
    Phone: (626) 799-9797
12  Fax: (626) 799-9795
    e-mail: TPRLAW@att.net

13  Matthew A. Paré, Esq., California State Bar No.: 258434
    **LAW OFFICE OF MATTHEW PARE, APC**
14  823 Anchorage Place, Suite 114
    Chula Vista, CA 91914
15  Phone: (619) 869-4999
    Fax: (619) 475-6296
16  e-mail: mattparelawca@gmail.com

17  Mark Andrew Byrne
    Byrne and Nixon LLP
18  888 West Sixth Street Suite 1100
    Los Angeles, CA 90017
19  213-620-8003
    213-620-8012 (fax)
20  markbyrne@byrnenixon.com

21  Andrew R Korn
    The Korn Diaz Firm
22  4221 Avondale Avenue
    Dallas, TX 75219
23  214-521-8800
    214-521-8821 (fax)
24  akorn@kbdtexas.com

25                              By:    /s/ Matthew A. Paré
26                                    _____
                                      Matthew A. Paré, Esquire
27