# Exhibit A

1  Thomas P. Riley, SBN 194706
   LAW OFFICES OF THOMAS P. RILEY, P.C.
2  First Library Square
   1114 Fremont Avenue
3  South Pasadena, CA 91030-3227

4  Tel: 626-799-9797
   Fax: 626-799-9795
5  TPRLAW@att.net

6  Attorneys for Plaintiff
7  Innovative Sports Management, Inc.

8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
                    SOUTHERN DIVISON
10

11  INNOVATIVE SPORTS MANAGEMENT, INC.    Case No. 8:12-cv-01748-TJH-PLA

12              Plaintiff,                 PLAINTIFF'S INITIAL
                                           DISCLOSURES
13          vs.

14  RENZO MACCHIAVELLO, et al.,
15
16              Defendants.

17
        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
18

19
        Pursuant to the Federal Rules of Civil Procedure, Plaintiff, Innovative Sports Management,
20
   Inc. hereby submit its Initial Disclosures of the principal known evidentiary bases for the claims
21
   asserted. Plaintiff makes these Disclosures based on the information reasonably available to it based
22
   on its investigation of the claims to date. Plaintiff reserves the right to supplement these Disclosures
23
   should additional information become available to Plaintiff.
24  ///
25  ///
26  ///
27  ///
28  ///

A.   **Plaintiff's Proposed Witness List:**

1.   Doug Jacobs, President, INNOVATIVE SPORTS MANAGEMENT, INC.
     c/o LAW OFFICES OF THOMAS P. RILEY, P.C.
     First Library Square
     1114 Fremont Avenue
     South Pasadena, CA 91030

2.   Renzo Macchiavello – Defendant
     c/o Law Offices of Matthew Pare
     Mr. Matthew A. Pare
     303 H Street, Suite 435
     Chula Vista, CA 91910

3.   Macchiavello, LLC – Defendant
     c/o Law Offices of Matthew Pare
     Mr. Matthew A. Pare
     303 H Street, Suite 435
     Chula Vista, CA 91910

4.   All employees of Renzo's Taste of Peru who were working on the evening of October 11, 2011, and the morning of October 12, 2011. (Defendants' counsel to provide name, address, and work telephone number of each person.)

5.   All patrons of Renzo's Taste of Peru who were in attendance on the evening of October 11, 2011, and the morning of October 12, 2011. (Identity and address information to be supplied by the Defendants' counsel).

6.   Defendants' accountants and/or bookkeepers, either on Defendants' staff, or employed by outside bookkeeping/accounting firms. (Defendants' counsel to provide name, address, and business telephone number of each person.)

7.   The custodian of records from the local cable and/or satellite programming provider servicing the Defendants' establishment on October 11, 2011. (Defendants' counsel to provide name, address, and business telephone number of each provider.) (Plaintiff's counsel will identify the custodian of records.)

8.   All inculpatory witnesses identified during discovery.
     (Identity and address information to be supplied to Defendants' counsel as made available.)

9.   Anthony J. Levatino (Private Investigator)
     A.J. LEVATINO INVESTIGATIVE SERVICES
     25602 Alicia Parkway, Suite 235
     Laguna Hills, CA 92653


B.   **Documents Provided to Defendant for Copying and Inspection:**

1.   Affidavit of Investigator Anthony J. Levatino (Attached hereto, see Exhibit 1).

2.   Closed-Circuit Television License Agreement dated October 4, 2011 (Exhibit 2).

3.   Closed-Circuit Rate Card regarding *Program* (Attached hereto, see Exhibit 3).

C.   **Computation of Damages:**

    a.   47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii):    $         110,000.00

    b.   47 U.S.C. 553 (b)(2) and (c)(2)(c):    $         60,000.00

    c.   Conversion:    TO BE DETERMINED

    d.   Violation Cal. B&P §17200    TO BE DETERMINED

    d.   Attorneys' Fees:    TO BE DETERMINED

    e.   Costs:    TO BE DETERMINED

                           **Total:**    **TO BE DETERMINED**

## CERTIFICATION OF COUNSEL

To the best of my knowledge, information and belief, formed after an inquiry that is reasonable under the circumstances, the above Disclosures are complete and correct as of this date.

Respectfully submitted,

Dated: June 20, 2013

LAW OFFICES OF THOMAS P. RILEY, P.C.
By: Thomas P. Riley
Attorneys for Plaintiff
Innovative Sports Management, Inc.

///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

STATE OF CALIFORNIA

COUNTY OF ORANGE

## AFFIDAVIT

I hereby declare under penalty of perjury and in conformance with the provisions set forth in Title 28 U.S.C. § 1746

that I, Anthony J. Levatino, being duly sworn according to law deposes and says, that on October 11, 2011 at 1:00 p.m.

I conducted an Internet search for both Chilean and Peruvian restaurants in an attempt to locate an establishment

showing the Chile vs. Peru, 2011 CONCACAF World Cup Series soccer match. At 1:15 p.m., I called Renzo's Taste

of Peru; Phone (949) 955-9053, located at 2222 Michelson Drive, Irvine, CA 92612, CA. The phone was answered by

an unidentified male who told me they were going to show the match.

At approximately 4:23 p.m., I parked my vehicle in the public parking lot front of the establishment and took covert

photographs of the exterior. As evidence, I took one (1) overall exterior photograph and labeled it as Photo #1, took

one (1) photograph of the door by which I entered and labeled it as Photo #2. These photographs were transferred to the

Compact Disc (CD) accompanying this affidavit.  Attachment #1 of this affidavit includes a printout of Photo #1 and #2

for reference.

At 4:26 p.m. I entered Renzo's to conduct a cable piracy investigation. There was no cover charge to enter the

establishment, which was a restaurant specializing in Peruvian food and was open to the public. I purchased a bowl of

chicken soup for $2.95 from an employee behind the counter. This employee was a White, male, in his late 40's, 5'9"

tall, with brown hair, a slight moustache and goatee, and he was wearing a blue shirt with blue jeans.

I observed one (1) television inside this establishment, which was an unknown brand, 25" diagonal, silver-colored,

flat-screen television mounted on the Northwest corner wall of the restaurant just inside the front door.  This

television was connected to an open laptop computer and was periodically adjusted by the above described employee. I

heard one of the patrons address him by the name of something similar to "Alessandro."

At the time I was inside the above establishment, I observed the Chile vs. Peru soccer match.  Chile was wearing red

jerseys and blue shorts, and Peru was wearing white jerseys with white shorts. Upon my entrance, the match was 37

minutes into the 1st Period and the score was Chile 2 and Peru 0. I took covert video of the portion of the match and

labeled it as Video #1 on the Compact Disc (CD) accompanying this affidavit.

I also observed the following distinguishing items inside the establishment: Serving counter, customer tables and chairs both inside and outside the restaurant, a unisex bathroom down a small hallway on the south side of the restaurant, stainless steel pan mounted on the west wall above a beverage cooler, and a Salvation Army picture on the west wall near the cash register.

This establishment rates Good.

The capacity of this establishment was approximately 25 persons in the restaurant, and 15 persons at the tables outside. At the time of my appearance I counted the number of patrons three (3) separate times.  The head counts were 8, 9, and 6.  I left the above establishment at 5:06 p.m. on October 11, 2011, and took an exterior video of the location and labeled it as Video #2 on the Compact Disc (CD) accompanying this affidavit.

All the photos and videos gathered as evidence and referenced above are attached hereto and made a part hereof and are intended to substantiate and verify my observations as described herein. I also observed the following license plates in the parking area:

1)  6AUG152        2)  4YLX006        3)  4TLF944

4)  2ZNV374        5)  5TUP491        6)  912P7C1

Dated:  10/21/11                Signed:        _____

                                Print Name:    Anthony J. Levatino
                                Agency:        A.J. Levatino Investigative Services
                                Address:       25602 Alicia Parkway, Suite 235
                                               City/State/Zip: Laguna Hills, CA 92653
                                Phone/fax:     (949) 667-1701/(888) 783-1310
                                PI License:    26424

Attachment #1                                                    Affidavit of Anthony J. Levatino

**Renzo's Taste of Peru**
**2222 Michelson, Irvine, CA  92612**



Photo #1



Photo #2

## ACKNOWLEDGMENT

State of California
County of _____Orange_____ )

On _OCT 24 204_ before me, _Huy Dang / Notary Public_
                            (insert name and title of the officer)

personally appeared _ANTHONY JOSEPH LEVATINO_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

HUY DANG
COMM. # 1948833
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. SEP. 16, 2015

Signature _____ (Seal)



Overview                          Check License                          Help

## View Case Status

The information below summarizes the case you selected.

## License Number: BUS10-01110

| Name: | MACCHIAVELLO LLC |
|---|---|
| DBA | DBA RENZO'S A TASTE OF PERU |
| Application Date: | 4/21/2010 |
| Address: | 2222 MICHELSON DR IRVINE CA 92612 Unit# 200 |

**License Information**

| Business Start | 4/21/2010 |
|---|---|
| Business Closed | |
| Expiration Date | 3/31/2013 |
| NAICS (North American Industry Classification System) | 722211 |
| Business Classification | Limited-Service Restaurants |
| Type of Ownership | Limited Liability Company |
| Principal | RENZO MACCHIAVELLO |
| Title | OWNER |
| Business Phone | (714) 655-4543 |
| Number of Employee(s) | 4 |
| Status | Active |

## What would you like to do next?

**Back to Search**

Help

Top of Page

Use this page to view the details of the selected case.

Version: 3.4.1.20050617.01

To comment on this page, send email to **IrvineBusinessLicense@cityofirvine.org**

*privacy* *All people* *Liberty* *Speak* *without discrimination*
*common good* *Conscience*

# California Secretary of State Debra Bowen

Secretary of State     Administration   Elections   **Business Programs**   Political Reform   Archives   Registries

**Business Entities (BE)**

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Processing Times**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business Relations Program**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

## Business Entity Detail

Data is updated weekly and is current as of Friday, March 16, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | MACCHIAVELLO LLC |
| Entity Number: | 201003910231 |
| Date Filed: | 02/05/2010 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 10 KENDALL ST |
| Entity City, State, Zip: | LAGUNA NIGUEL CA 92677 |
| Agent for Service of Process: | RENZO MACCHIAVELLO |
| Agent Address: | 10 KENDALL ST |
| Agent City, State, Zip: | LAGUNA NIGUEL CA 92677 |

* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**   **New Search**   **Printer Friendly**   **Back to Search Results**

Privacy Statement | Free Document Readers
Copyright © 2012   California Secretary of State

# EXHIBIT 2

## EVENT DISTRIBUTION AGREEMENT

AGREEMENT made as of the 4th day of October, 2011, by and between Integrated Sports Management, Inc, dba Integrated Sports, having an office at 720 Monroe Street, Suite E303, Hoboken, New Jersey 07030 (hereinafter "IS" or "Distributor"), and Al Jazeera Media Network, ("ALJ"), a Qatar private corporation with public benefit having an office at P.O. Box 23123, Doha, Qatar.

WHEREAS, ALJ is engaged, among other activities, in commercializing television rights emerging from sports events;

WHEREAS, ALJ is interested in distributing and exhibiting through Closed Circuit Television, within the Territory (hereinafter defined) South American World Cup Qualifiers during October and November, 2011 as set forth on Exhibit A (such qualifiers, individually and collectively, hereinafter the "Event");

WHEREAS, Distributor is engaged in the business of marketing, distributing and producing special events, such as the Event, to Closed-Circuit Television Venues (as such terms are defined herein);

WHEREAS, ALJ desires to engage Distributor as its sales agent to market, distribute and produce the Event for Closed-Circuit exhibition; and

WHEREAS, Distributor is willing to accept such engagement upon the terms and conditions set forth herein;

Now, THEREFORE, the parties hereto do hereby agree as follows:

### 1. Rights Granted

(a) ALJ hereby grants Distributor the non-exclusive right, subject to the terms and conditions set forth below, to market and enter into agreements for the Live Closed Circuit TV exhibition of the Event within the Territory. For clarity, no PPV rights are granted to Distributor pursuant to this Agreement.

(b) As used in this Agreement, the term "Closed Circuit Television" or "CCTV" means an exhibition designed for viewing by a multiple-person audience in an enclosed premises which is open to the public for paid admission; and the term "Pay-Per-View" or "PPV" exhibition is an exhibition available for television viewing in private homes upon payment of a fee solely for the Event.

(c) ALJ hereby reserves the exclusive right to market, distribute and exploit the Event and all rights associated therewith other than as specifically granted to Distributor or otherwise limited as set forth herein. Any and all rights not expressly granted to Distributor herein shall remain the exclusive property of ALJ.

(d) For purposes of this agreement, the "Territory" is the United States of America.





## 2. Parties Obligations

(a) Distributor shall:

    1. Engage in sales of the Event to CCTV venues within the Territory, using a call center and trained sales reps;

    2. Provide appropriate Promotion/Marketing, including:

        a. Aggressive marketing towards existing database of 2,000 establishments and locate venues not on the current list;

        b. Develop a dynamic pricing strategy, subject to final approval of ALJ;

        c. Make Turn-on arrangements with PPV providers

        e. Provide ALJ with timely and accurate sales reports

(b) ALJ shall:

    1. Work with host broadcasters to provide a network quality production of the Event with commentary in English and Spanish, simultaneously with the live performance of the Event, and shall provide the Distributor with the television signal for distribution to the CCTV venues. The continuous television signal of the event provided by Producer will be without commercial interruptions,

    2. Participate in all reasonable aspects of Distributor's testing of the transmission of the Event as communicated to ALJ by Distributor.

    3. Provide to Distributor substantially all advertising, marketing and promotional materials that are prepared by or on behalf of ALJ for use in connection with the Event..

    4. Not permit any broadcast TV distribution of an Event within the Territory within 48 hours of the live Event.

## 3. Compensation/Revenue split

(a) The Event shall be priced to CCTV venues in the Territory in accordance with the rate card set forth on Exhibit B. Distributor shall not deviate from the rate card without ALJ's prior written approval. Distributor shall collect, on ALJ's behalf and in trust for ALJ, all amounts due from CCTV venues by reason of sales of the Event pursuant to this Agreement, and shall pay over to ALJ within seven (7) days after the date of the applicable Event all gross receipts from CCTV sales pursuant to this Agreement, after retaining Distributor's fee hereunder of Twenty (20%) percent of gross receipts. Distributor shall make all payments to ALJ hereunder by wire transfer to an account designated by ALJ. Simultaneously with each payment, Distributor shall deliver to ALJ a sales report setting forth the number and type of CCTV venues that purchased the applicable Event. On not less than ten (10) days' prior written notice to Distributor, ALJ shall have the right to audit Distributor's books and records pertaining to the Event to verify the accuracy of Distributor's payments and accountings under this Agreement. Any audit shall take place during normal business hours and in such manner as not unreasonably to interfere with the normal business activities of Distributor. No statement may be audited more than once and no audit may commence more than two (2) years after the last Event date.

## 4. Trademarks and Other Property Rights



2



(a) Distributor hereby recognizes and agrees that all copyrights, trademarks, trade names and other rights associated with the Event and the Event itself (collectively, the "Property") are and shall remain the sole and exclusive property of ALJ or others, and Distributor shall not have any right to use the Property except as herein agreed. In no event shall Distributor have the right, nor grant others the right, to use the Property after the expiration or sooner termination of this Agreement.

(b) Distributor covenants to take appropriate measures to prevent misappropriation or unauthorized use of the Event and all rights associated therewith, and shall give ALJ prompt written notice of any such misappropriation or unauthorized use.

## 5. Term/Renewal

(a) The term of this Agreement shall commence upon the execution hereof and shall expire upon the earliest of (i) the date of completion of all accounting and payment obligations of the parties hereunder following exhibition of the Event; or (ii) the date of earlier termination of this Agreement by either party pursuant to the terms hereof, provided that such termination shall not diminish either party's obligations hereunder that should have been performed prior to the termination of this Agreement. This Agreement may be extended by mutual written agreement of the parties to include additional matches as part of the "Event".

## 6. Termination

This Agreement shall terminate:

(a) Upon payment by Distributor of all amounts due and owing to ALJ hereunder in connection with exhibition of the Event;

(b) Upon written notice to Distributor in the event Distributor shall fail to perform any of its non-monetary obligations under this Agreement pursuant to Paragraph 2 hereof or otherwise, and Distributor's failure to cure within 24 hours

(c) In the event of filing of any petition or complaint under the United States Bankruptcy Code or other Federal or state act of similar nature by or against ALJ or Distributor which is not discharged within thirty (30) days; or

(d) If a receiver, trustee, conservator or liquidator is appointed for ALJ or Distributor or an assignment for the benefit of creditors is made by ALJ or Distributor for all or a substantial portion of its assets; or ALJ or Distributor shall be adjudicated bankrupt, insolvent or in need of any relief provided to debtors by any court.

Notwithstanding the foregoing, the provisions of Sections 3, 4 and 8 shall survive expiration or termination of this Agreement.

## 7. Force Majeure

ALJ shall not be liable to Distributor for damages or be deemed to be in breach hereof if, by reason of any act, omission or occurrence beyond its reasonable control, any or all of the Event is delayed or is not available for exhibition.

## 8. Choice of Law and Arbitration

3



In the event of a dispute between the parties hereto, the parties agree to submit such dispute to
binding arbitration in accordance with the rules and procedures of the American Arbitration
Association. The aggrieved party shall file a notice to arbitrate with the American Arbitration
Association in the State of New York whose rules and procedures shall govern such arbitration.
The award of the arbitrator may be entered in any court of competent jurisdiction for
enforcement.

**9. Counterparts**
This agreement may be executed in counterparts, all of which when taken together shall be
deemed to constitute one agreement.

**10. Notices**
Any notice required or permitted hereunder, except as otherwise provided in this Agreement,
shall be in writing and sent by first class mail, facsimile or hand delivery to the addresses set
forth below, or to such other address as may hereinafter be designated:

If to ALJ:

Al Jazeera Media Network
P.O. Box 23123
Doha, Qatar

With a copy to:

SNR Denton US LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: Lisa Weiss
Tel: (212) 768-5362
Fax: (212) 768-6800

If to Distributor:

Integrated Sports
720 Monroe St., ste E303
Hoboken, New Jersey 07030
Tel: (201) 610-1500
Fax: (201) 610-1575

**11. Assignment**
This Agreement and the rights and obligations hereunder shall not be assigned by either party,
except that ALJ may assign any of its rights and obligations under this Agreement without
consent: (a) to any affiliate (where affiliate means any entity that directly or indirectly controls,

4

is controlled by, or is under common control with ALJ); or (b) in connection with any merger, consolidation, reorganization, sale of all or substantially all of its related assets or similar transaction.

**12. Entire Agreement**
This Agreement supersedes all previous agreements concerning the Event, if any, between the parties and sets forth the entire understanding of the parties, and no change, amendment or modification of this Agreement shall be effective unless made in writing and signed by both parties.

**13. Severable Provisions**
If any part of this Agreement shall be deemed invalid, it shall be deemed separable, and the remainder of this Agreement shall continue to be in full force and effect.

**14. Governing Law**
This Agreement, and the rights and obligations of the parties hereunder, shall in all cases be governed and construed in accordance with the laws of New York.

**15. Headings**
The paragraph headings of this Agreement are for purpose of reference only and shall not control or affect the meaning or construction of any provision of this Agreement.

In Witness Whereof, the parties have set their hands and seals on the day and year first above written.

Integrated Sports Management, Inc.

By: _____
Douglas Jacobs, President

Al Jazeera Media Network

By: _____

0 5 OCT 2011

5

# EXHIBIT 3

# INTEGRATED SPORTS

SPORTS TV • ATHLETE MARKETING • CORPORATE CONSULTING

## CLOSED-CIRCUIT TELEVISION RATE CARD

## *SAWCQ: Peru v. Chile World Cup Qualifier Game*
## Tuesday, October 11, 2011

| Seating | Rate |
|---------|------|
| 1-50 | $750 |
| 50-100 | $1,000 |
| 101-150 | $1,250 |
| 151-200 | $1,500 |
| 200+ | $1,750 |



720 Monroe Street, Suite E303 • Hoboken, NJ 07030 • P: 201 610 1300  F: 201 610 1373  www.integratedsportsnet.com

## PROOF OF SERVICE (SERVICE BY OVERNIGHT MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On June 20, 2013, I caused to serve the following documents entitled:

### PLAINTIFF'S INITIAL DISCLOSURES

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Mr. Matthew A. Pare, Esquire                    Attorneys for Defendant
**LAW OFFICES OF MATTHEW PARE**                 Renzo Macchiavello and Macchiavello, LLC
303 H Street, Suite 435
Chula Vista, CA 91910
Email: mattparelawca@gmail.com

The fully sealed envelope with pre-paid postage was thereafter placed in our law firm's outbound mail receptacle in order that this particular piece of mail could be taken to the United States Post Office in South Pasadena, California later this day by myself (or by another administrative assistant duly employed by our law firm).

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 20, 2013, at South Pasadena, California.

Dated: June 20, 2013                            /s/ Nadea Khachikyan
                                                **NADEA KHACHIKYAN**